May it please the court, Saul Wallach, appearing for appellant Sean Hartnett. I think this case presents really two questions for the court. And the first one is set forth in detail in the briefs, simply whether or not this was a seizure under the Drayton-Bostick totality of the circumstances test. I'd like to focus my argument, unless the court has more specific questions, on the question of whether this was a seizure from the get-go. I'd like to focus on the second question I think is presented here, which is what does a suspect really have to do to tell the police that he wants to bring an encounter to a close? Now here we have Mr. Hartnett sitting in his private sleeper car on a train. The police knock, two agents knock at his door. He doesn't even stand up. He opens the door. They begin asking him questions. And eventually they ask Agent Todd, who's doing all the talking, asks if he can search Mr. Hartnett's bag. And Mr. Hartnett says, do you have a search order, meaning a warrant? When the answer to this question is no, he says, no, you can't search my bag. And then at that point we have, for the first time in the discussion, the second officer, Officer Pasquiat, steps forward and says, well, do you mind if we smell your bag? And at this point Mr. Hartnett relents and the rest is history. But couldn't he have said, no, you can't smell my bag either. You can't search it. You can't smell it. Well, he certainly could have, and I think that's the very question. I mean, he had the physical ability to say, no, you can't smell my bag. But I think the question that we're getting at here is, would a reasonable person have felt free to have done that after he just made – Felt free to say, no, you can't search it. Well, that's correct. And having just said, no, you can't search, now the question is – And seeing that that was in some sense ineffectual because the officers are still standing there, I guess my point is by telling them they couldn't search, isn't he really saying, I want you to go away. I wish to be left alone. And a question I ask is what – In other words, your argument is that the second – the smell question should never have been asked? Is that the – or that's when the agents cross the line? That's basically right. They asked if they could search his bag, and he said no. And at that point, what he was really saying, I think, and Orhorhaji, if I'm pronouncing it right, essentially says the same thing, that when the suspect in Orhorhaji told the agents that, you know, they couldn't enter his apartment without a warrant, what he was really saying is, I would like to bring this encounter to an end. And I think that's what Mr. Hartnett is saying. Wasn't it true that the stuff that was in the bag that he knew about was principally stuff that doesn't smell? Well, I think – Isn't this ecstasy or something like that? I suppose that's probably true, but I think that this is – we're not supposed to evaluate this from the standpoint of what was in the bag. We're supposed to ask this question from the standpoint of what a reasonable, innocent person in Mr. Hartnett's position would have felt, whether he felt – In making that judgment, you know, I think your case would have been a lot stronger before the Supreme Court decided Drayton, right? You agree with that? I agree that I was not happy when the Drayton decision came down two days before my hearing. But I will concede that much, because I think I wouldn't have much credibility if I didn't. The question really is, how do you distinguish this case from Drayton, right? Isn't that the question? I think there are facts that distinguish it. Tell us what they are. I think a key fact is that this happened not on a bus. Most of these cases, including Drayton, happen on a crowded bus. There's witnesses around. Or Horhaci, again, speaks to the public or non-public setting. This is a non-public setting. It's also a situation, and this is somewhat similar with Stevens, where Mr. Hartnett is being completely singled out. In Stevens, the person was singled out in that the agents got on a bus and went right to him. This is worse. The agents are going on a train, and they're knocking at his door. There's not even anyone else present. Well, the court in Drayton indicated that the officers were polite and non-confrontational in their tone, which is conceded here, so far as this encounter is concerned. I'm not contending that they were confrontational, but I think the single biggest distinction between this case and Drayton that I see gets back to the issue that Mr. Hartnett did say he did not wish them to search his bag. And I think the notion that that demonstrates that he understood this to be consensual is a little illogical. Well, were these agents blocking the doorway? Well, Judge Chesney's finding on that point I think specifically was that he wasn't hemmed in. I mean, I don't know if he was literally blocked, but they're standing in front of the doorway in this tiny room, one on one side, one on the other. It's three and a half feet deep, and he's sitting down. He didn't even stand up. I think a reasonable person would feel somewhat ganged up upon in this situation. So there is the idea that this is two against one, and Mr. Hartnett is the one. But I get back to this idea that unlike Drayton, and some of the cases of Cormier out of this court, for instance, do focus on has the suspect made any attempt to end the encounter. And clearly I think saying that you don't want your bag searched is an attempt to end the encounter. What if Mr. Hartnett had shut the door like the government says he should have done and the government then knocked on the door and he opened it up again, and then they said, can we sniff your bag, would that be a consensual situation because he understood he had a right to close the door? I think if we're going to have a rule like we have in Drayton where the Supreme Court made clear you don't need to give like a Miranda-style warning to suspects that they have a right not to consent. That's a fair rule. It's judged on the totality of the circumstances. But I think the flip side of that rule is that if the suspect manifests some kind of desire, and it's fairly clear that he's manifesting a desire to bring the meeting to a close, the courts have to honor that. Otherwise, the whole notion that these are voluntary encounters is really starting to break. If you put a kind of a per se rule that once the individual declines a search, that's it. I'm not really asking for a per se rule. I'm saying that, again, I think it's a totality of the circumstances. If you look at the suspect's conduct and he's manifesting a desire to bring the meeting to a close, then I think you can no longer say it's voluntary. And Mr. Hardnett did exactly what the suspect did in Orr or Hodgie, and that was considered, Judge Reinhardt, Justice Reinhardt said that that conduct showed that the suspect wished to bring the meeting to a close. I think the same is true here. The conduct being saying that you can't search my bag. You cannot search my bag. That's not a per se rule. Okay. Well, I think these facts, and I'm not asking for any per se rule. I'm saying that is a fact that basically is paramount and demonstrates an unambiguous desire to be left alone. I'm not so much asking for a per se rule as saying under these facts, I think it's fairly clear that that's what Mr. Hardnett was attempting to do. And I'll save my last minute or so for rebuttal. Good morning. Amber Rosen on behalf of the United States. I think, in effect, by saying that when the, well, let me just say there clearly is no and should be no per se rule that when a suspect refuses permission to search, that that somehow should indicate a desire to end the encounter and that the two should be equated. One, as this Court has suggested and the defendant concedes, it is a totality of the circumstances test. Two, this Court has already ruled in United States v. Malone, under those facts, the defendant in that case did refuse a request to search, the encounter continued, and the encounter was deemed consensual by the Court in that case. So that kind of rule has already been rejected, maybe not explicitly, but implicitly by the findings of that Court. The idea that Orhor Hagi gives precedence to this equating of you can't search my bag with a manifestation to end the encounter, I think really mischaracterizes what Orhor Hagi was all about. Unlike in this case where the district court and under also sort of the precedence of Drayton, there really was no finding of any coercive factors. In Orhor Hagi, looking under the totality of the circumstances, the Court there found pretty much every single factor, coercive factor, to be present. That is, the defendant was hemmed in, the officers, there were four officers clearly outnumbering the defendant. They were in the apartment building where he lived, the most protected kind of space. They demanded to enter his apartment rather than request it. They brandished their weapon. They used an officious and threatening tone, and it was in that context, and I should add that they gave a misleading answer when asked about the warrant. The defendant said, Do you have a warrant? And the officers said, We don't need a warrant to talk to you, which the Court found, although legally correct, to be implying that he could not refuse their request. And it was only in that context that the Court made a statement about what Orhor Hagi's question about the warrant meant. What's your view on where Orhor Hagi stands after Drayton? This was pre-Drayton, of course, and to the extent that Orhor Hagi emphasized the failure to inform the suspect that he could terminate the encounter, that maybe that's been overruled by Drayton, or at least certainly minimized by Drayton. Well, I think in some sense both cases are on all fours with each other, to the extent that they're both saying, Look, it's a totality of the circumstances test. I don't think Orhor Hagi is against that. I think there were so – there was so many circumstances in Orhor Hagi, and the Court went through and talked about each of the factors. And I think Drayton court went through each of the factors. I think what Drayton did, though, was to say no single factor controls. And the question of whether you advise them is to be given no more weight than any other factor of proximity or number of officers or location. Those are all to be viewed within the entire context, and no single factor should be given any additional weight. And Drayton was quite clear on that point. I think to some extent defendant is making the implicit argument that somehow making another question or continuing the encounter after a suspect says, No, you can't search my bags, is somehow overly persistent. I mean, I think that's underlying what he's saying, that somehow you can't ask any additional questions. And I just want to make the point that because it came out in the briefs a little bit and the district court also talked about this persistence issue, that really the case, that doctrine was cited by Cormier where, of course, it was found not to be present, and it cited the Juarez case or J-E-R-E-Z, United States versus Jerez. And, you know, the facts of that case were so, are so distinguishable from this case. In that case where the court did find too much persistence, they knocked, they were in the middle of the night, knocked on the hotel room door for three minutes, then knocked on the window for an additional two minutes while shining a flashlight in the window and yelling that they were the police. So, you know, it's those kinds of circumstances that could perhaps be so persistent as to take away the ability for an encounter to be consensual. But obviously those, none of those facts are present here. And all they did, as the district court said, was ask one more question. I mean, I think the district court called it take their best shot. He said, No, you can't consent. They continued in their polite tone and said, Well, can we smell it? And he said, Yes. There's nothing to indicate any coercive or any additional coercive circumstance at that point. Does it make any difference that this was not a random questioning the way that some of the other cases were? I think Drayton was. I don't think it does. I mean, I think that can be a factor which the court can take into consideration. For example, if you're, there's a lot of other people there and the police go directly to you, that can be a factor that the court considers in determining whether that makes it more coercive or not. But I think in the absence of a context which makes it obvious that that came into or that that added to the coerciveness, it doesn't necessarily make it more or less coercive. And as we pointed out, there was no way for this suspect or a reasonable person in his position to know whether he was being singled out or not. And on that, I would submit it, Your Honors. Thank you. Thank you. Very briefly, Mr. Harnett obviously wasn't advised here that he had a right to end the encounter. And, of course, he doesn't have to be advised. But at the same time, because he wasn't advised, you know, he doesn't know exactly what he has to do to make the officers go away, to end the encounter. And I think in that circumstance, you have to give him some benefit of the doubt. Otherwise, as I said, I just don't think, I think you've lost the whole idea of voluntariness if you're going to hold him to, I mean, in my view, almost like a per se test that the government is asking for, where he has to say, use specific magic words in order to bring the encounter to an end. I think his saying he doesn't want to be searched, it's a fairly, it should be fairly clear that if you don't want to be searched, what you're basically saying is I don't want to be bothered anymore. Please go away. And in light of the fact that Mr. Harnett didn't have any way of knowing what he was specifically to say to convey that message to the officers, I think we have to give him the benefit of the doubt. And I'll submit it. Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Tashima